IN THE UNITED STATED DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**RICHARD STANFORTH, JR., for himself
and all others similarly situated and
HELEN LUCERO, for herself and
all others similarly situated,**

    **Plaintiffs,**

vs.                                                                          **Civil No. 09-1146 RLP/RHS**

**FARMERS INSURANCE COMPANY
OF ARIZONA, and Arizona corporation;
FARMERS GROUP, INC., a California corporation,
WILLIAM B. TOBIN, DAVID ARAGON, and
JOHN AND JANE DOES 1 through 250,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFFS' MOTION TO REMAND**

This matter comes before the court on Plaintiffs' Motion to Remand to state court. [Docket No. 14]. Having reviewed the written submissions of the parties, the Complaint and Notice of Removal, and having heard oral argument, the court **FINDS** that the Motion is not well taken and will be **DENIED**.

**I.**     **Background**

Plaintiffs filed this class action suit in the Second Judicial District Court, State of New Mexico, seeking damages against Farmers Insurance Company Of Arizona, Farmers Group, Inc. ("Farmers" herein) their individual insurance agents and 250 "John/Jane Doe" insurance agents, for alleged breach of statutory, common law and contractual duties[1]. [Docket No. 1, Ex. 2]. Plaintiffs

---

[1] Count I- violation of the New Mexico Unfair Trade Practices Act; Count II- violation of the New Mexico Unfair claims Practices Act and the Insurance Code; Count II - recovery of uninsured motorist coverage in the amount equal to liability coverage limits; Count IV - breach of implied covenant of good faith and fair dealing; Count V - breach of contract; Count VI - injunctive relief; Count VII -declaratory relief.

are auto policy holders who allege: that Defendants induced them into rejecting uninsured/ under-insured motorist coverage ("UM/UIM coverage" herein) on at least one owned vehicle; that they were not advised that the total amount of UM/UIM coverage they held would be reduced by this rejection, thereby eliminating their ability to "stack" coverage in the event of an accident with an uninsured or underinsured motorist; that they were not provided with a policy containing a valid rejection/waiver or valid notice of rejection/waiver of UM/UIM coverage; that they were each subsequently involved in an accident with an at-fault under-insured driver; that they made claims for UM/UIM coverage in a amount equal to the total amount of liability coverage held on all owned vehicles; that their damages exceeded total amount of liability coverage held on all owned vehicles, and that Defendant Farmers denied their claims for UM/UIM coverage in excess of the coverage applicable to a single vehicle. Plaintiffs allege that their claims are "typical" of the claims of the members of the class.[2]  [Id., ¶80].

Defendants removed this action to this court on December 4, 2009, claiming federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA" herein), Pub. L. 109-2, 119 Stat. 4 (2005) (codified in scattered section of 28 U.S.C.). [Docket No. 1].  The petition for removal includes the following additional facts:

Plaintiff, Stanforth:
1) The under-insured driver was 100% at fault
2) The under-insured driver had $25,000 of liability coverage
3) Stanforth suffered bodily injury[3]

---

[2]Plaintiffs define the putative class as : All Farmer's automobile insurance policy holders, how are New Mexico residents, and who have one or more than one vehicle insured by Farmers and who were denied uninsured or under-insured motorist coverage in an amount equal to the total limits of liability coverage on all vehicles covered under such policies, and All individuals who are considered Class Insured, insured by Farmers by virtue of their occupancy in an insured vehicle, who were improperly denied uninsured or under-insured motorist coverage in an amount equal to the liability coverage limits of the vehicle occupied.

[3]Medical expenses: $8,891.65; lost wages of $48,000.00; future medical expenses; permanent impairment.

|  |  |  |
|---|---|---|
|  | 4) | Stanforth carried $30,000 UIM coverage on 1st auto. |
|  | 5) | Farmers paid Stanforth $5,000 (the amount of his UIM coverage less amount of other driver's liability coverage) |
|  | 6) | Stanforth carried $25,000 liability coverage on 2nd auto. |
|  | 7) | Stanforth is seeking additional $25,000 in UIM coverage. |
| Plaintiff, Lucero: | 1) | The under-insured driver was 100% at fault |
|  | 2) | The under-insured driver had $25,000 of liability overage |
|  | 3) | Lucero suffered bodily injury[4] |
|  | 4) | Lucero carried $35,000 UIM coverage on 1st auto. |
|  | 5) | Farmers paid Lucero $10,000 (amount of her UIM coverage less amount of other driver's liability coverage). |
|  | 6) | Lucero is seeking an additional $30,000 in UIM coverage based in correspondence received from her attorney. |

## II. Issues Raised

Two issues are raised in the Motion to Remand:

1. Whether Defendants have affirmatively established the requisite amount in controversy for CAFA jurisdiction, and if so,

2. Whether Plaintiffs have established that the "local controversy" exception to CAFA applies.

## III. <u>CAFA Jurisdiction</u>

Congress created diversity jurisdiction by statute to allow federal courts to entertain suits where parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C.A. § 1332.

CAFA amended this basic diversity statute to confer original federal jurisdiction over class actions involving (a) at least 100 members, (b) over $5,000,000 in controversy, exclusive of interest and costs, and (c) minimal diversity (diversity between any defendant and any plaintiff class member). <u>Prime Care of Northeast KS., LLC v. Humana Ins. Co.</u>, 447 F.3d 1284, 1285 (10th

---

[4]Medical expenses: $5,693.04; future medical expenses, permanent impairment.

Cir.2006); 28 U.SC. § 1332(d)(2)(A), (d)(5)(B).

Defendants, as the parties seeking to invoke this court's jurisdiction, have the burden of demonstrating that the statutory requirements for jurisdiction have been met. Martin v. Franklin Capital Corp., 251 F.3d 1284, 1290 (10th Cir.2001). "Under this burden, the defendant must provide evidence that it is 'more likely than not' that the amount in controversy" satisfies the federal diversity jurisdictional amount requirement. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9thCir. 1996).

> Although the Tenth Circuit has not yet considered whether the burden of proof is different under CAFA than under basic diversity jurisdiction, at least five circuits have held that the burden remains unchanged, and this court is aware of no circuit court case holding to the contrary. See Blockbuster, Inc. v. Galeno, 472 F .3d 53, 58 (2d Cir.2006); Morgan v. Gay.471 F.3d 469, 473 (3rd Cir.2006); Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 686 (9th Cir.2006); Miedema v. Maytag Corp., 450 F.3d 1322, 132930 (11th Cir.2006); Brill v. Countywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir.2005). Moreover, multiple district court cases in the Tenth Circuit are in accord. See, e.g., Barnes v. First Franklin Fin. Corp., No. CIV-06-558-M, 2007 WL 1072171, at *1 (W.D .Okla. Apr. 4, 2007); Lally v. Country Mut. Ins. Co., No. 06-cv-00531-WYD-MEH, 2006 WL 2092610, at *2 (D.Colo. July 27, 2006).

Apodaca v. Allstate Ins. Co., (Not reported in F.Supp. 2d), 2008 WL 113844, *3 (D. Colo. Jan. 9, 2008).

**IV.    Determination of Amount in Controversy**

The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue during the course of the litigation. McPhail v. Deere & Co., 529 F.3d 947, 956-57(10th Cir. 2008). "The amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal." Laughlin v. Kmart Corp., 50 F.3D, 871, 873 (10th Cir. 1995). Conclusory allegations will not support the exercise of federal diversity jurisdiction. Varela v. Wal-Mart Stores, East, Inc. , 86 F.Supp. 2d 1109, 1111-1112 (D. N.M. 2000) (citing Allen v. R & H Oil & Gas Co.,

63 F.3d 1326, 1335 (5th Cir. 1995). Estimates and affidavits offered to support the amount in controversy must not be based on speculation, Geismann v. Aestheticare, LLC, 622 F.Supp. 2d 1091, 1099-1100 (D. Kan. 2008), and any assumptions made must have support in the record presented. Lowdermilk v. U.S. Bank National Ass'l, 479 F.3d 994, 1001-1002 (9th Cir. 2007).

Where, as here, the plaintiff does not allege a specific amount of damages in the complaint, a removing defendant must establish the jurisdictional amount by a preponderance of the evidence. McPhail v. Deere & Co., 529 F.3d at 953, citing Martin v. Franklin Capital Corp., 251 F.3d 1284, 1290( 10th Cir. 2001).

Defendants have advanced three methods of calculating damages to reach the jurisdictional requirement of $5,000.000. One method I will term the household average calculation. In support of this calculation, the Notice of Removal included affidavit testimony establishing that during the relevant period before the court, there were 87,020 households with Farmers' auto coverage for some period of time, of which 10,178 had no UM/UIM coverage. For those with some UM/UIM coverage (76,842 households), Farmers paid a total of $41,055,371 on 3,407 UM/UIM claims, for an average of $524 per household. Defendants assert that is reasonable to estimate that the accident rate for those insureds with no UM/UIM coverage would be the same as for those with coverage. They then apply the average UM/UIM recovery to the households with no coverage, and arrive at an amount in controversy of $5,435,052.[5] I find this method to be reasonable, nonspeculative, and substantiated by the record.

In addition, I find the amount in controversy requirement is satisfied by thePlaintiffs' allegations, combined with the amount of their individual claims for additional UM/UIM coverage.

---

[5] $534 x 10,178 = $5,435,052.

Plaintiffs' assert that their claims are "typical." They seek, at a minimum, an additional $25,000 in under-insured motorist coverage. They have named as defendants 252 individual insurance agents, the two named agents and 250 "John/Jane Doe" agent.[6] If each agent is responsible for the claims of only one typical insured, the amount in controversy is $6,300.000.

## V.     Local Controversy Exception to CAFA jurisdiction.

Plaintiffs may avoid federal jurisdiction if they can prove that the local controversy exception applies. Kaufman v. Allstate New Jersey Ins. Co., 561 F.3d 144, 153 (3rd Cir. 2009); see Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1024 (9th Cir. 2007) ("[O]nce federal jurisdiction has been established under [§ 1332(d)(2)], the objecting party bears the burden of proof as to the applicability of any express statutory exception under §§ 1332(d)(4)(A) and (B)."); Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675, 680 (7th Cir.2006) (same); Frazier v. Pioneer Americas. LLC, 455 F.3d 542, 546 (5th Cir.2006) (same); Evans v. Walter Indus., Inc., 449 F.3d 1159, 1165 (11th Cir.2006) (same); Cox v. Allstate Ins. Co., Not reported in F.Supp.2d, 2008 WL 2167027, *3 (W.D. Okla, May 22, 2008) (Applying this standard to removal under CAFA).

Under the local controversy exception, CAFA will not provide jurisdiction over a class if the non-diverse defendant/defendants are responsible for conduct that forms a significant basis for claims made by the class and the relief sought against that defendant is a significant portion of the relief sought by the class. 28 U.S.C. §1332(d)(4)(A). This exception to CAFA jurisdiction is intended to remove federal jurisdiction over class actions with a truly local focus, because of the interest of state courts in adjudicating such disputes. Coffey v. Freeport McMoran Copper & Gold,

---

[6]At oral argument, Plaintiffs' counsel confirmed that it was their intent to sue all Farmers Insurance agents who were active during the relevant period. The affidavit of Christopher Hansen, submitted with Defendants' Notice of Removal, states that there were an average of 268 Farmers agents active at any given time during the relevant period. [Docket No. 1, Ex. E].

581 F.3d 1240, 1243 (10th Cir. 2009).

### (A)   "John/Jane Doe" defendants.

28 U.S.C. § 1441(a) provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, **the citizenship of defendants sued under fictitious names shall be disregarded**.  (emphasis added).

Accordingly, the citizenship of the "John/Jane Doe" defendants is not considered in determining the applicability of the local controversy exception.  McPhail v. Deere & Co., 529 F.3d at  951; Australian Gold, Inc., v. Hatfield, 436 F.3d 1228, 1235 (10th Cir. 2006).  This is true even if the identity of the "Doe" defendant is ascertainable. Thompson v. Golden Corral Corp., Not reported in F.Supp.2d,  2008 WL 4093716, *6-10(D.N.M. 2008) (J. Browning).

### (B)   Significant Relief & Significant Basis

While CAFA doesn't define the term "significant relief," several courts have held that a class seeks " 'significant relief' against a defendant when the relief sought against that defendant is a significant portion of the entire relief sought by the class." Evans v. Walter Indust., 449 F.3d at 1167 (citing Robinson v. Cheetah Transp., No. 06-0005, 2006 WL 468820 (W.D.La. Feb.27, 2006), and Kearns v. Ford Motor Co., No. 05-5644, 2005 WL 3967998 (C.D.Cal. Nov.21, 2005)). "[W]hether a putative class seeks significant relief from an in-state defendant includes not only an assessment of how many members of the class were harmed by the defendant's actions, but also a comparison of the relief sought between all defendants ...." Robinson v. Cheetah Transp., 2006 WL 468820, at *3.

Similarly,  CAFA doesn't define the term "significant basis."  Courts construing this term

have found that it doesn't require that every member of the proposed plaintiff class assert a claim against the local defendant, but instead "requires the alleged conduct (of the local defendant) to form a *significant basis* of all the claims asserted." Kaufman v. Allstate New Jersey Ins. Co., 561 F.3d at 155. (emphasis in the original). Most courts that have considered whether a defendant's conduct formed a "significant basis" for the claims asserted by the putative class have "focused their evaluation on a comparison of the alleged role played by a particular defendant with the roles of other named co-defendants." Joseph v. Unitrin, Inc., Not reported in F.Supp. 2d, 2008 WL 3822938, at *8 (citations omitted); see also Manson v. GMAC Mortg., LLC, 602 F.Supp.2d 289, 295-296 (D. Mass. 2009) ("Courts that have addressed the issue have required that the conduct of an allegedly 'significant' defendant 'must be significant in relation to the conduct alleged against other defendants in the complaint ....' ") (citations omitted); Kaufman v. Allstate, 561 F.3d at 157 ("The local defendant's alleged conduct must be an important ground for the asserted claims in view of the alleged conduct of all the Defendants.").

In this case, the most significant relief sought by Plaintiffs is against Farmers, not against the named non-diverse defendants, Tobin and Aragon, and the conduct of Tobin and Aragon is not a significant basis[7] for the claims asserted by the class. See Cox v. Allstate Ins. Co. 2008 WL 2167027, *4). This treatment of defendant insurance agents is consistent the legislative intent contained in the CAFA Senate Committee Report [8]:

---

[7]Plaintiffs' seven count Complaint names Defendants Tobin and Aragon in Count I and Count II, asserting claims under the NM Unfair Trade Practices Act and the Unfair Claims Practices Act and Insurance Code. Counts I and II, as well as the remainder of the claims asserted in the Complaint, for recovery of under-insured motorist coverage (Count III), damages for breach of the implied covenant of good faith and fair dealing (Count IV), damages for breach of contract (Count V), injunctive and declaratory relief (Counts VI and VII) are raised as to Farmers.

[8]See Exxon Mobil Corp. v. Allapattah Svcs., Inc., 545 U.S. 546, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (recognizing that courts may occasionally resort to the use of legislative history in order to determine

> [I]n a consumer fraud case alleging that an insurance company incorporated and based in another state misrepresented its policies, a local agent of the company named as a defendant presumably would not fit [the "significant defendant"] criteria. He or she probably would have had contact with only some of the purported class members and thus would not be a person from whom significant relief would be sought by the plaintiff class viewed as a whole. Obviously, from a relief standpoint, the real demand of the full class in terms of seeking relief would be on the insurance company itself. Similarly, the agent presumably would not be a person whose alleged conduct forms a significant basis for the claims asserted. At most, that agent would have been an isolated player in the alleged scheme implemented by the insurance company.

S. Rep. No. 109-14 at 40, quoted with approval in Coffey v. Freeport-McMoran Copper & Gold, Inc., 623 F.Supp. 2d 1257, 1266, n. 19 (W.D. Okla. 2009).

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Remand [Docket No. 14] is **DENIED**.

_____
RICHARD L. PUGLISI
CHIEF UNITED STATES MAGISTRATE JUDGE

---

whether they have correctly interpreted ambiguous statutory text).